UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAROLD ENG, individually and on behalf of all others similarly situated, et al.,<br><br>Plaintiff,<br><br>v.<br><br>EDISON INTERNATIONAL, THEODORE F. CRAVER, JR., WILLIAMS JAMES SCILACCI, and RON LITZINGER,<br><br>Defendants. | Case No.: 3:15-cv-01478-BEN-KSC<br><br>**ORDER GRANTING MOTION TO DISMISS THIRD AMENDED COMPLAINT** |

Pending before the Court is the Motion to Dismiss Plaintiff's Third Amended Complaint ("TAC") filed by Defendants Edison International, Southern California Edison's ("SCE")[1] parent company, Theodore F. Craver, Jr., William James Scilacci, and Ron Litzinger. (Docket No. 58.) The motion is fully briefed. For the reasons that follow, Defendants' motion is **GRANTED**, and the Third Amended Complaint is **DISMISSED**.

---

[1] The Court refers to Defendant as "SCE" throughout.

1

# BACKGROUND

Plaintiff's Third Amended Complaint contains largely the same factual allegations as the First and Second Amended Complaints (Docket Nos. 20, 36), which the Court addressed in detail in its *September 14, 2016 Order* and *May 5, 2017 Order*, and now incorporates by reference. (*See* Docket No. 35 at pp. 2-6, Docket No. 54 at pp. 2-5.) New allegations will be discussed where relevant to the Court's analysis of Defendants' motion to dismiss.

# LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is appropriate if, taking all factual allegations as true, the complaint fails to state a plausible claim for relief on its face. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556–57 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (requiring plaintiff to plead factual content that provides "more than a sheer possibility that a defendant has acted unlawfully"). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

All factual allegations are accepted as true and "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).[2]

---

[2] The Court grants Defendants' Request for Judicial Notice as to all documents relied on or referred to in the TAC, SCE's reported stock price history, and other publicly available financial documents, including SCE's SEC filings. *See Dreiling v. Am. Exp. Co.,* 458 F.3d 942, 946 n.2 (9th Cir. 2006) (SEC filings subject to judicial notice).

The TAC claims violations of Section 10(b) and 20(a) of the Exchange Act of 1934 and Securities and Exchange Commission (SEC) Rule 10b-5. To state a securities fraud claim, a plaintiff must plead: (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase and sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. *Webb v. Solarcity Corp.*, No. 16-16440, 2018 WL 1189422, at *4 (9th Cir. Mar. 8, 2018) (citing *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011)).

Additionally, securities fraud claims are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 (PSLRA). *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012). Under Rule 9(b), plaintiffs must "state with particularity the circumstances constituting fraud." *Id.* "Rule 9(b) applies to all elements of a securities fraud action, including loss causation." *Oregon Pub. Employees Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 605 (9th Cir. 2014).

The Court must assume the truth of the facts presented in a plaintiff's complaint and construe inferences from them in the light most favorable to the nonmoving party when reviewing a motion to dismiss under Rule 12(b)(6). *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## DISCUSSION

The Court previously dismissed Plaintiff's Second Amended Complaint for failing to sufficiently allege the loss causation element. (*See* Docket No. 54.) Defendants' Motion to Dismiss argues dismissal is appropriate because the TAC's allegations regarding loss causation are even weaker than in the Second Amended Complaint. The Court agrees.

**A.  Loss Causation**

To sufficiently plead loss causation, a plaintiff must plausibly allege a causal connection between a defendant's fraud and the economic loss damages for which

3

recovery is sought. *Mineworkers' Pension Scheme v. First Solar Inc.* ("*First Solar*"), 881 F.3d 750, 753 (9th Cir. 2018) ("Because loss causation is simply a variant of proximate cause, the ultimate issue is whether the defendant's misstatement, as opposed to some other fact, foreseeably caused the plaintiff's loss.") (quoting *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210 (9th Cir. 2016)).

After briefing on this motion concluded, Plaintiff filed a notice of supplemental authority regarding the Ninth Circuit's recent decision in *First Solar*. (Docket No. 62.) Plaintiff asserts *First Solar* "is pertinent because it rejects singular application of the bright-line loss causation test argued by defendants in this matter." (*Id.* at p. 1.) He also complains that "this Court has previously accepted defendants' standard of loss causation, which is not the correct standard under *First Solar*." (*Id.* at p. 2) (citation omitted.) Plaintiff's reliance on *First Solar* is misplaced.

It is true that this Court has analyzed Plaintiff's prior pleadings to determine whether it sufficiently pleaded loss causation as causally connected to a revelation of fraud on the market. That is because Plaintiff himself advanced this sole theory of loss causation in both the Amended Complaint and Second Amended Complaint. (*See* Docket No. 20 ¶¶ 121-127 ("As the falsity of defendants' statements and the omitted facts were revealed, Edison's stock price fell as the artificial inflation dissipated"); Docket No. 36 ¶¶ 142-148 (same)). Notably, under *First Solar*, the Court's analysis was appropriate. *First Solar*, 881 F.3d at 753-54 ("Revelation of fraud in the marketplace is simply one of the 'infinite variety' of causation theories a plaintiff might allege to satisfy proximate cause. . . . *When plaintiffs plead a causation theory based on market revelation of the fraud, this court naturally evaluates whether plaintiffs have pleaded or proved the facts relevant to their theory.*") (internal citations omitted and emphasis added).

Turning to the operative TAC, however, in addition to re-alleging its market revelation of fraud theory, Plaintiff for the first time raises a new theory of loss causation: that the SCE's stock price decline resulted from "the materialization of the risk that ORA and TURN would seek to unwind the SONGS settlement." (TAC ¶ 125.) Under the

4

3:15-cv-01478-BEN-KSC

"materialization of the risk" approach, a plaintiff can establish loss causation by showing that "'misstatements and omissions concealed the price-volatility risk (or some other risk) that materialized and played some part in diminishing the market value' of a security." *Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*, 730 F.3d 1111, 1120 (9th Cir. 2013) (quoting *Lentell v. Merrill Lynch & Co., Inc.,* 396 F.3d 161, 176–77 (2d Cir. 2005)).

The "materialization of the risk" approach has not been adopted by the Ninth Circuit, although it has been applied by some district courts in the Ninth Circuit. *Nuveen*, 730 F.3d at 1122 n.5 (citations omitted). The Court finds it need not determine the applicability of this approach because Plaintiff has again failed to plausibly establish that the alleged partial disclosures were a substantial cause of his alleged loss. *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008) ("So long as the complaint alleges facts that, if taken as true, *plausibly* establish loss causation, a Rule 12(b)(6) dismissal is inappropriate.") (emphasis added).

It is not sufficient to simply allege a defendant's stock price declined; the decline in stock price must be "statistically significant."[3] *In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1266 (S.D. Cal. 2010) (citing *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1063 (9th Cir. 2008)); *see also Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346-47 (2005) (finding plaintiffs' purchase price inflation allegation insufficient on its own where the complaint "fail[ed] to claim that Dura's share price fell *significantly* after the truth became known") (emphasis added); *Lloyd*, 811 F.3d at 1210

---

[3] The Court notes that Plaintiff adopted this position earlier in this litigation. (*See* Docket No. 49 at p. 2) ("loss causation depends on whether the stock moved in a "statistically significant" manner when compared to the relevant market) (citing *In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1266 (S.D. Cal. 2010)).) However, according to a footnote in the TAC, Plaintiff now claims statistical significance is "not required to plead a claim under the PSLRA." (TAC ¶ 125 n.26.) The Court believes Plaintiff's first position is accurate.

(finding amended complaint adequately pleaded loss causation where it alleged the corrective disclosure "caused [the] stock price to drop *precipitously*") (emphasis added); *In re Novatel Wireless Sec. Litig.*, 830 F. Supp. 2d 996, 1019 (S.D. Cal. 2011) ("the decline in stock price caused by the revelation of that truth must be statistically significant"). "[W]hether a drop in a stock's price is statistically significant will vary depending on the average trading range for that particular stock." *Greenberg v. Crossroads Sys., Inc.*, 364 F.3d 657, 665 n.9 (5th Cir. 2004). For example, "[a] drop of 10% for a volatile stock may not be statistically significant whereas the same drop for a stock with little average movement may be significant." *Id.*

Here, Plaintiff's argument that "the size of the drops" in the price of SCE's stock is not relevant to the Court's inquiry is unpersuasive. (Opp'n at p. 19.) As Plaintiff correctly asserts, a defendant's misrepresentation "need not be the sole reason of the decline in value of the securities." (*Id.* at p. 14) (quoting *In re Gilead*, 536 F.3d at 1055.) However, to plausibly allege loss causation, Plaintiff must allege facts from which the Court may draw an inference that Defendants' allegedly fraudulent conduct was a *substantial* cause of his loss, which naturally includes an evaluation of the stock's price drops. *In re Gilead*, 536 F.3d at 1055; *see also Loos v. Immersion Corp.*, 762 F.3d 880, 887 (9th Cir. 2014) (at pleading stage, plaintiff must plausibly allege economic loss was caused by defendant's material misrepresentation "rather than by changing market conditions, changing investor expectations, or other unrelated factors").

The TAC relies on three previously pleaded partial disclosures: (1) California Assemblyman Anthony Rendon's March 19, 2015 letter requesting the California Public Utilities Commission ("CPUC") order SCE to produce documents (price dropped .99% on March 20, 2015); (2) the CPUC's April 15, 2015 order directing SCE to produce documents (price dropped .79%); and (3) TURN's June 24, 2015 request that the CPUC reopen the settlement (price dropped 2.71%). The TAC newly identifies a partial disclosure on August 10, 2015, when ORA allegedly "indicated to media outlets that it would withdraw from the settlement" (price dropped 2.41%). (TAC ¶ 143.)

To the extent Plaintiff alleges that the three previously pleaded partial disclosures constitute market revelations of the truth, the Court continues to find the reasoning in its *September 14, 2016 Order* sound, and adopts its reasoning regarding loss causation. (*See* Docket No. 35 at pp. 19-21.) The Court further finds that reasoning equally applies to the newly alleged partial disclosure on August 10, 2015 that ORA indicated it would withdraw from the SONGS settlement.

In addition, the Court adopts the reasoning in its *May 5, 2017 Order* regarding Plaintiff's failure to plausibly allege the statistical significance of the alleged stock price drops. (*See* Docket No. 54 at pp. 8-9). That SCE's stock price declined on the dates in question is a fact; whether that decline was "statistically significant" is, at this stage, an inference Plaintiff wishes the Court to draw. The Court finds the TAC's allegations on this issue do not support such an inference. Moreover, the Court has previously explained that it cannot put on blinders to facts Plaintiff wishes it not to see. (*See* Docket No. 35 at p. 20.) As indicated in the tables below, on the dates Plaintiff alleges SCE's stock price declined as a result of Defendants' fraud (under either his market revelation of fraud or materialization of the risk theories), the stock price drops were well within its average trading range.[4] *Greenberg*, 364 F.3d at 665 n.9.

///
///
///
///
///

---

[4] Plaintiff's argument that he established statistical significance by including allegations comparing the movement of competitor's stocks is not persuasive; that a competitor's stock's price rises while a defendant's stock price falls and vice versa, without more, is insufficient to show statistical significance or plausibly establish loss causation.

7

1) **March 20, 2015**[5]

| Date[6] | SCE Stock Price (U.S. Dollars) | Increase/Decrease[7] (U.S. Dollars) | Increase/Decrease[8] (Percentage) |
|---|---|---|---|
| March 10, 2015 | $62.07 | - | - |
| March 11, 2015 | $62.00 | -$0.07 | -.11% |
| March 12, 2015 | $63.05 | $1.05 | 1.69% |
| March 13, 2015 | $62.83 | -$0.22 | -.35% |
| March 16, 2015 | $64.16 | $1.33 | 2.12% |
| March 17, 2015 | $63.52 | -$0.64 | -1% |
| March 18, 2015 | $65.49 | $1.97 | 3.10% |
| March 19, 2015 | $64.81 | -$0.68 | -1.04% |
| **March 20, 2015** | **$64.17** | **$-0.64** | **-.99%** |
| March 23, 2015 | $64.22 | $0.05 | .08% |
| March 24, 2015 | $63.13 | -$1.09 | -1.70% |
| March 25, 2015 | $62.58 | -$0.55 | -.87% |
| March 26, 2015 | $62.23 | -$0.35 | -.56% |
| March 27, 2015 | $62.18 | -$0.05 | -.08% |
| March 30, 2015 | $63.04 | $0.86 | 1.38% |
| March 31, 2015 | $62.47 | -$0.46 | -.73% |

---

[5] The information in the following four tables is derived from the SCE's Historical Stock Price Data. (Docket No. 58-6, Defs.' Request for Judicial Notice ("RJN"), Ex. 27.)

[6] The tables reflect the SCE stock's market closing price in the week prior to and following the price decline dates identified by Plaintiff. (Defs.' RJN, Ex. 27.) Based on the facts of this case, the Court found this period to be relevant in evaluating the stock price decline's statistical significance. *See First Solar*, 881 F. 3d at 753 ("loss causation is a 'context-dependent' inquiry") (quoting *Lloyd*, 811 F.3d at 1210).

[7] This column in each of the tables represents the increase or decrease in the SCE stock's market closing price on consecutive trading days in U.S. dollars.

[8] This column in each of the tables represents the increase or decrease in the SCE stock's market closing price on consecutive trading days as a percentage.

**2) April 15, 2015**

| Date | SCE Stock Price (U.S. Dollars) | Increase/Decrease (U.S. Dollars) | Increase/Decrease (Percentage) |
|---|---|---|---|
| April 2, 2015 | $63.04 | - | - |
| April 6, 2015 | $64.24 | $1.20 | 1.90% |
| April 7, 2015 | $63.73 | -$0.51 | -.79% |
| April 8, 2015 | $63.71 | -$.02 | -.03% |
| April 9, 2015 | $63.37 | -$0.34 | -.53% |
| April 10, 2015 | $63.79 | $0.42 | .66% |
| April 13, 2015 | $62.81 | -$0.98 | -1.54% |
| April 14, 2015 | $62.99 | $0.18 | .29% |
| **April 15, 2015** | **$62.49** | **-$0.50** | **-.79%** |
| April 16, 2015 | $61.68 | -$0.81 | -1.30% |
| April 17, 2015 | $61.07 | -$0.61 | -.99% |
| April 20, 2015 | $61.65 | $0.58 | .95% |
| April 21, 2015 | $60.50 | -$1.15 | -1.87% |
| April 22, 2015 | $60.01 | -$0.49 | -.81% |
| April 23, 2015 | $60.44 | $0.43 | .72% |
| April 24, 2015 | $61.58 | $1.14 | 1.89% |

**3) June 24, 2015**

| Date | SCE Stock Price (U.S. Dollars) | Increase/Decrease (U.S. Dollars) | Increase/Decrease (Percentage) |
|---|---|---|---|
| June 12, 2015 | $57.20 | - | - |
| June 15, 2015 | $57.36 | $0.16 | .28% |
| June 16, 2015 | $57.58 | $0.22 | .38% |
| June 17, 2015 | $57.99 | $0.41 | .71% |
| June 18, 2015 | $58.86 | $0.87 | 1.50% |

| Date | SCE Stock Price (U.S. Dollars) | Increase/Decrease (U.S. Dollars) | Increase/Decrease (Percentage) |
|---|---|---|---|
| June 19, 2015 | $58.61 | -$0.25 | -.42% |
| June 22, 2015 | $58.38 | -$0.23 | -.39% |
| June 23, 2015 | $57.63 | -$0.75 | -1.28% |
| **June 24, 2015** | **$56.07** | **-$1.56** | **-2.71%** |
| June 25, 2015 | $56.00 | -$0.07 | -.12% |
| June 26, 2015 | $56.23 | $0.23 | .41% |
| June 29, 2015 | $55.68 | -$0.55 | -.98% |
| June 30, 2015 | $55.58 | -$0.10 | -.18% |
| July 1, 2015 | $56.40 | $0.82 | 1.48% |
| July 2, 2015 | $57.55 | $1.15 | 2.04% |
| July 6, 2015 | $57.60 | $0.05 | .09% |

**4) August 10, 2015**

| Date | SCE Stock Price (U.S. Dollars) | Increase/Decrease (U.S. Dollars) | Increase/Decrease (Percentage) |
|---|---|---|---|
| July 29, 2015 | $59.08 | - | - |
| July 30, 2015 | $59.53 | $0.45 | .76% |
| July 31, 2015 | $60.01 | $0.48 | .81% |
| August 3, 2015 | $60.15 | $0.14 | .23% |
| August 4, 2015 | $59.67 | -$0.48 | -.80% |
| August 5, 2015 | $59.86 | $0.19 | .32% |
| August 6, 2015 | $60.60 | $0.74 | 1.24% |
| August 7, 2015 | $61.01 | $0.41 | .68% |
| **August 10, 2015** | **$59.54** | **-$1.47** | **-2.41%** |
| August 11, 2015 | $59.00 | -$0.54 | -.91% |
| August 12, 2015 | $60.69 | $1.69 | 2.86% |
| August 13, 2015 | $60.59 | -$0.10 | -.16% |

| August 14, 2015 | $61.14 | $0.55  | .91%  |
| August 17, 2015 | $61.74 | $0.60  | .98%  |
| August 18, 2015 | $61.23 | -$0.51 | -.83% |
| August 19, 2015 | $61.94 | $0.71  | 1.16% |

In sum, Plaintiff has failed to sufficiently plead loss causation.

**B.  Scienter**

Because the Court agrees Plaintiff has not plausibly pleaded loss causation, it declines to decide Defendants' challenge to the sufficiency of Plaintiff's scienter allegations.

## CONCLUSION

After two opportunities to amend, Plaintiff's TAC fails to cure the pleading deficiencies the Court previously identified, and Plaintiff has not requested further amendment.  Nevertheless, the Court has considered whether Plaintiff should be granted leave to amend and finds Defendants would be prejudiced if Plaintiff was allowed to file a fourth amended complaint – having now prevailed three times on their motions to dismiss the same claims, and in the absence of grounds to justify amendment of the claims.  Fed. R. Civ. P. 15(a)(2).  Accordingly, Defendants' motion to dismiss the TAC is **GRANTED**, and Plaintiff's TAC is **DISMISSED with prejudice**.

IT IS SO ORDERED.

Dated:  March 16, 2018

Hon. Roger T. Benitez
United States District Judge